# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54213-7-II |
| Respondent, | |
| v. | |
| LYNN JOHNSON, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Lynn Johnson appeals the exceptional sentence the trial court imposed following his guilty plea to nine felony sex offenses. Johnson argues that the trial court erred by imposing a sentence that is clearly excessive. He also argues that the trial court erred by imposing a community custody condition prohibiting his internet access that is not crime related and overbroad.

We disagree that Johnson's sentence was clearly excessive, but agree that the community custody condition was not crime related. Therefore, we affirm Johnson's exceptional sentence, but we reverse the challenged community custody condition and remand for the trial court to strike the community custody condition prohibiting Johnson's internet access.

FACTS

Lynn Johnson was charged with nine felony sex offenses. Counts I and II charged Johnson with third degree child molestation. Both counts also charged the aggravating factors that his conduct was part of an ongoing pattern of sexual abuse and that the sexual conduct occurred in return for a fee.

Counts III and IV charged Johnson with second degree rape of a child. Both counts also charged the aggravating factor that his conduct was part of an ongoing pattern of sexual abuse, while Count IV also charged the aggravating factor that the victim was particularly vulnerable or incapable of resistance.

Count V charged Johnson with third degree rape of a child. This count also charged the aggravating factor that the victim was particularly vulnerable or incapable of resistance.

Counts VI, VII, and VIII charged Johnson with second degree child molestation. Each count also charged the aggravating factor that his conduct was part of a pattern of sexual abuse and that the sexual conduct occurred in return for a fee.

Count IX charged Johnson with communication with a minor for immoral purposes. Johnson communicated with his victim through text messages. In total, there were five victims between the ages of 12 and 18.

Johnson pled guilty as charged. Johnson also stipulated to all the aggravating circumstances.

The trial court entered an order for a Pre-Sentence Investigation (PSI). The PSI showed that Johnson had two prior sex offense convictions: second degree child molestation and third degree child molestation. The PSI also provided a narrative of the crimes to which Johnson pled guilty. The PSI stated that over the course of three years, Johnson would exchange cigarettes, marijuana, and alcohol for sexual acts. Further, Johnson sexually abused his victims while they were intoxicated. One victim stated Johnson molested or raped her about three times per month for two years.

Johnson stated that he knew the victims for many years and considered them to be friends. "He knew the victims were just young people and they may not realize how much this will affect

them until they are older." Supplemental Clerk's Papers (Suppl. CP) at 147. "[H]e knew that he would be arrested at some point, and was a bit surprised it did not happen sooner." Suppl. CP at 147. When asked why he committed these crimes, he said, "'I liked to do it.'" Suppl. CP at 147

Johnson's standard sentencing range for the second degree rape of a child conviction was 210 to 280 months to life. RCW 9.94A.507. The trial court imposed an exceptional sentence of 420 months to life. The trial court also imposed community custody conditions, including that Johnson "shall not access internet unless previously authorized by CCO and/or SOTP therapist." CP at 36.

The trial court rejected Johnson's argument that he should be shown leniency at sentencing because he pled guilty to keep his victims from having to go to trial. Based on Johnson's agreement that aggravating circumstances existed, the trial court found that a sentence within the standard range was not enough due to the outrageous nature of Johnson's crimes. The trial court found that Johnson's argument for leniency was "too little, too late." Verbatim Report of Proceedings (VRP) at 73. Instead, the trial court focused on the fact that Johnson knew what he was doing was wrong and had previously received specialized training to help overcome "this." VRP at 73.

With respect to the community custody conditions, the trial court prohibited Johnson from accessing the internet, stating, "[W]e live in a world where electronic communication is becoming increasingly common and particularly with younger individuals." VRP at 78. Because of this, the trial court found the condition was necessary to prevent the facilitation of any future crimes.

Johnson appeals his exceptional sentence and the community custody condition prohibiting his access to the internet.

3

## ANALYSIS

### A. CLEARLY EXCESSIVE SENTENCE

Johnson argues that the trial court erroneously imposed a clearly excessive sentence. We disagree.

A sentence that is outside the standard sentencing range is subject to appeal. RCW 9.94A.585(2). We review whether an exceptional sentence is clearly excessive for an abuse of discretion. *State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). Abuse of discretion occurs when a sentence is decided on untenable grounds or for untenable reasons, or it is a sentence that no reasonable person would make. *State v. Ritchie*, 126 Wn.2d 388, 393, 894 P.2d 1308 (1995). A sentence that no reasonable person would make is one that is so long it shocks the conscience of the reviewing court. *Id.* at 396.

Johnson argues that his exceptional sentence was clearly excessive. He compares his crimes and sentence to the crimes committed and the sentence imposed in *Ritchie*. We do not consider Johnson's argument based on a comparison with other cases because we do not engage in a proportionality review. *See Id.* (rejecting a proportionality review comparing cases for exceptional sentences).

Johnson also argues that his sentence was clearly excessive because of his age. Specifically, Johnson points to the fact that he will be approximately 103 years old when he is eligible to appear before the Indeterminate Sentence Review Board. According to Johnson, this would make it unlikely that he would reoffend.

A party must provide argument in support of the issues presented for review, provide citations to legal authority, and refer this court to the relevant parts of the record. RAP 10.3(a)(6). Johnson has neither cited to the record nor provided legal authority for his argument that his age

alone makes his sentence excessive. Similarly, Johnson neither cites to the record nor provides legal authority to support his argument that his age alone shows that he is unlikely to reoffend, and thus, his sentence is clearly excessive. "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" *State v. Logan*, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). We reject Johnson's argument.

Johnson further argues that his sentence is clearly excessive because he made the decision to plead guilty in order to spare his victims the difficulty of trial. We reject Johnson's argument that his sentence was clearly excessive merely because he pled guilty.

The record shows that it was only after Johnson was caught that he allegedly showed mercy to his victims. Johnson knew the severity of his crimes. "He knew the victims were just young people and they may not realize how much this will affect them until they are older." Suppl. CP at 147. "[H]e knew that he would be arrested at some point, and was a bit surprised it did not happen sooner." Suppl. CP at 147. When asked why he committed these crimes, he said, "'I liked to do it.'" Suppl. CP at 147.

And, as the trial court noted, some of Johnson's current offenses would go unpunished because of his high offender score. Johnson had a previous offender score of nine before even considering his nine current offenses. Imposing a sentence above the standard sentencing range where an offender has a high offender score is not unreasonable because sentencing courts may consider "free crimes" when imposing excessive sentences. *State v. Feely*, 192 Wn. App. 751, 770, 368 P.3d 514 (2016) (finding a sentencing court may impose a consecutive sentence where the defendant would enjoy the benefit of "free crimes"). "Free crimes" occur when "the 'defendant

5

has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished.'" *Id.* at 770 (quoting RCW 9.94A.535(2)(c)).

The trial court's sentence was not shocking in light of these circumstances. Therefore, we hold that the trial court did not abuse its discretion by imposing an exceptional sentence of 420 months to life confinement.

## B. COMMUNITY CUSTODY CONDITION PROHIBITING INTERNET ACCESS

Johnson also argues that the community custody condition prohibiting his internet access is unauthorized by statute because it is not a crime-related prohibition. He further argues that the condition is constitutionally overbroad. We agree that the condition is not a crime-related prohibition.[1]

We review whether the trial court had statutory authorization to impose a community custody condition de novo. *State v. Johnson*, 180 Wn. App. 318, 325, 327 P.3d 704 (2014). "Any condition imposed in excess of [the court's] statutory grant of power is void." *Id.* If the trial court had statutory authorization, we review the trial court's decision to impose the condition for an abuse of discretion. *Id.* at 326. We will reverse such conditions only if they are manifestly unreasonable. *State v. Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010).

Johnson argues that the community custody condition prohibiting his internet access is not crime related and therefore unauthorized by statute. We agree.

---

[1] Because we hold that the community custody condition prohibiting internet access is not crime related as required by RCW 9.94A.703(3)(f), we do not reach Johnson's challenge that the community custody condition is constitutionally overbroad. *See Tunstall v. Bergeson*, 141 Wn.2d 201, 210, 5 P.3d 691 (2000) (stating the court will avoid deciding an issue on constitutional grounds where it may be resolved on statutory grounds), *cert. denied*, 532 U.S. 920 (2001).

The trial court has the discretion to impose crime-related prohibitions as community custody conditions. RCW 9.94A.703(3)(f). A crime-related prohibition is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).[2] "'Directly related' includes conditions that are 'reasonably related' to the crime." *State v. Irwin*, 191 Wn. App. 644, 656, 364 P.3d 830 (2015) (quoting *State v. Kinzle*, 181 Wn. App. 774, 785, 326 P.3d 870, *review denied*, 181 Wn.2d 1019 (2014)). We have stricken "crime-related community custody conditions when there is 'no evidence' in the record that the circumstances of the crime related to the community custody condition." *Id.* at 656-57.

Johnson relies on our decision in *Johnson*. In *Johnson*, the defendant was convicted of third degree child molestation. *Johnson*, 180 Wn. App. at 322. The sentencing court imposed a community custody provision prohibiting internet access. *Id.* We held that a court may not prohibit a defendant from using the internet if their crime lacks a nexus to internet use. *Id.* at 331.

Here, the trial court imposed a prohibition on Johnson's internet access, stating he "shall not access internet unless previously authorized by CCO and/or SOTP therapist." CP at 36. But there is no evidence in the record that Johnson's crimes involved the internet or that the internet contributed to or was related in any way to his crimes. Johnson communicated with his victims through text messaging. And the trial court did not rely on evidence in the record when imposing the internet prohibition; the court merely stated that "we live in a world where electronic communication is becoming increasingly common and particularly with younger individuals" and that "I can prevent [Johnson] from having them as a way to facilitate future crimes." VRP at 78.

---

[2] RCW 9.94A.030(10) was amended in 2020. However, there were no substantive changes made affecting this opinion.

No. 54213-7-II

Given the absence of any evidence that the internet played any role in Johnson's crimes, the condition prohibiting access to the internet is not crime related. Therefore, we hold that the trial court erred in imposing the community custody condition prohibiting internet access because it is not crime related.

## CONCLUSION

We affirm Johnson's exceptional sentence of 420 months to life, but we reverse the challenged community custody condition and remand for the trial court to strike the community custody condition prohibiting internet access.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                                             , C.J.
                                                    Lee, C.J.

We concur:

Worswick, J.

Cruser, J.